J-S39009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAMMERON L. MCKENZIE, | |
| Appellant | No. 1188 WDA 2016 |

Appeal from the PCRA Order Entered July 14, 2016
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0000384-2013

BEFORE:  BENDER, P.J.E., BOWES, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                **FILED JULY 28, 2017**

Appellant, Kammeron L. McKenzie, appeals from the post-conviction court's July 14, 2016 order denying his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, in which he raised several claims of ineffective assistance of counsel (IAC).  We affirm.

This Court summarized the procedural and factual history of Appellant's case in our disposition of his direct appeal:

> A jury found [Appellant] guilty of possession of a controlled substance (cocaine) with intent to deliver ("PWID"),[1] possession of a controlled substance,[2] possession of a small amount of marijuana,[3] carrying firearms without a license,[4] persons not to possess a firearm[5] and receiving stolen property.[6]  The trial court sentenced [Appellant] to an aggregate term of 5-10 years' imprisonment.[7]

---

[*] Retired Senior Judge assigned to the Superior Court.

…

[1] 35 P.S. § 780-113(a)(30).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(31).

[4] 18 Pa.C.S. § 6106(a)(1).

[5] 18 Pa.C.S. § 6105(a)(1).

[6] 18 Pa.C.S. § 3925(a).

[7] On October 30, 2013, the trial court sentenced [Appellant] to an aggregate term of 7-14 years' imprisonment. [Appellant] filed a timely post-sentence motion seeking modification of his sentence. He subsequently filed supplemental post-sentence motions which included challenges to the sufficiency and weight of the evidence. On January 30, 2014, the trial court granted [Appellant's] motion for modification of sentence and denied the remaining post-sentence motions. On February 28, 2014, the trial court resentenced [Appellant] to an aggregate of 5-10 years' imprisonment.

…

[Appellant] and his co-defendant, Anthony Slappy, were tried together. The trial court accurately recounted the evidence adduced during the … trial as follows:

On December 1, 2012 at approximately 1:30 a.m., Officer David Johnson of the City of Beaver Falls Police Department was on patrol in a marked police vehicle when he observed what he believed to be Anthony Slappy pumping gas into a white Cadillac at the A-Plus gas station in Beaver Falls. Officer Johnson also observed that another individual he could not identify from that distance was in the passenger seat of the Cadillac. After pumping the gas, the individual that appeared to be Slappy entered the driver's side of the Cadillac and exited the gas station parking lot.

As the Cadillac turned onto Eighth Avenue and then to 26th Street, Officer Johnson further observed that the taillights

of the vehicle were not illuminated. Officer Johnson then activated the overhead lights of his patrol vehicle in an attempt to initiate a traffic stop. According to Officer Johnson, the driver of the Cadillac started to pull toward the curb but ultimately drove back toward the middle of the road and continued driving. As a result, Officer Johnson activated his siren and notified dispatch that the driver was refusing to stop. The driver of the Cadillac disregarded the siren and continued traveling south on Tenth Avenue. As they approached the intersection of Tenth Avenue and 25th Street, it appeared to Officer Johnson that the driver attempted to make a left turn toward Ninth Avenue, but Captain Martin of the Beaver Falls Police Department had arrived to intercept the driver at Ninth Avenue. The driver continued on Tenth Avenue through a 'Do Not Enter' sign and onto a one-way street. It again appeared to Officer Johnson that the driver attempted to turn left at the intersection of 24th Street and Tenth Avenue, but the driver was again blocked by Captain Martin's police vehicle. The driver continued traveling south on Tenth Avenue, and, at the intersection of Tenth Avenue and 23rd Street, Officer Johnson observed, with the aid of his spotlight, the passenger moving around and throwing a white object out the window. According to Officer Johnson, the road on which the driver was traveling ended, and the driver was forced to turn left and eventually stop because he was intercepted by Captain Martin.

After stopping the vehicle, Officer Johnson and Captain Martin approached the Cadillac with their weapons drawn. Officer Johnson approached the passenger side of the Cadillac and recognized [Appellant] as the passenger of the vehicle. According to Officer Johnson, [Appellant] was leaning to the left and over his seat toward the floor of the Cadillac. Officer Johnson ordered [Appellant] to show his hands, and, after initially refusing to comply, [Appellant] raised his hands. Knowing that there was an active warrant for [Appellant]'s arrest, Officer Johnson removed [Appellant] from the inside of the Cadillac and took him to the back of the vehicle in order to conduct a search for weapons. While doing so, Officer Johnson observed a white rock substance on the window of the Cadillac. During the frisk, [Appellant] stated that he had 'a little bit of

weed.' The search uncovered a small baggy of suspected marijuana, $640, and a cell phone. After Captain Martin removed the driver who was determined to be Anthony Slappy from the Cadillac, the officers discovered an unloaded .45 caliber Taurus 24/7 Pro firearm on the driver's side of the vehicle. Officer Johnson described the location of the firearm as follows:

> [W]e did observe that there was a firearm also under the, what would be the driver's seat post, next to the hump. So if I would be sitting in the driver's seat, there, like, the bolts where the seat is bolted to the floor, there's a firearm that would be slid down on the side of the hump right against that post.

The magazine for the firearm was also located on the driver's side of the vehicle. The officers also found another cell phone and a 45 caliber bullet 'on the passenger floorboard where [Appellant] was seated[].' In addition, white residue that was later determined to be cocaine was found in the vehicle.

After [Appellant] and Slappy were arrested and secured for transport, Officer Johnson and Captain Martin went to the intersection of Tenth Avenue and 23rd Street where they previously observed a white rock substance thrown from the passenger side window of the Cadillac. Upon arriving at that location, the officers found and collected a plastic baggie of suspected crack cocaine as well as several solid pieces of suspected crack cocaine of varying sizes. These items as well as the evidence obtained from the Cadillac were turned over to the police department's record custodian, Detective Kevin Burau.

Once the officers returned to the station, the suspected marijuana and cocaine were tested, yielding positive results for the presence of marijuana and cocaine. The officers also determined that the Cadillac was registered to Slappy. After the Cadillac was impounded, the officers obtained a search warrant for the Cadillac. The subsequent execution of the search warrant revealed additional white, rock-type substances from both the driver and passenger sides of the vehicle. Using the serial number on the Taurus 24/7 Pro firearm, the officers conducted a search of the National Crime Information

Center database, which revealed that someone in Independence Township had reported that the firearm had been stolen. The officers also determined through an inquiry to the Pennsylvania State Police Firearms Unit that neither [Appellant] nor Slappy had a valid license to carry a firearm concealed. The firearm as well as the recovered ammunition, the suspected controlled substances, and DNA samples from [Appellant] and Slappy were subsequently transferred to the Pennsylvania State Police for further testing.

Trial Court Opinion, pp. 1-4.

Several additional facts bear mention. Joseph Kukosky, a forensic DNA scientist with the Pennsylvania State Police Crime Lab, testified that swabs taken from the firearm contained DNA that matched [Appellant's] DNA profile. In addition, both [Appellant] and Slappy testified in their own defense. [Appellant] admitted to possessing the firearm in Slappy's vehicle but testified that Slappy had given it to him. On the other hand, Slappy testified that he never possessed the firearm and claimed that [Appellant']s testimony was false. [Appellant] admitted possessing cocaine but claimed it was for personal use. The Commonwealth, however, demonstrated that [Appellant] possessed 10 grams of cocaine mostly in rock form but had no pipe with which to ingest cocaine. Additionally, [Appellant] was unemployed at the time of his arrest, but he carried $640.00 in his pocket and possessed two mobile cellular phones.

*Commonwealth v. McKenzie*, No. 527 WDA 2014, unpublished memorandum at 1-6 (Pa. Super. filed January 9, 2015) (some footnotes omitted).

Appellant filed a timely direct appeal from his judgment of sentence, and after this Court affirmed, *see id.*, our Supreme Court denied his subsequent petition for allowance of appeal. *See Commonwealth v. McKenzie*, 125 A.3d 776 (Pa. 2015). Appellant then filed a timely, *pro se* PCRA petition on October 30, 2015. Counsel was appointed and he filed an

amended petition on Appellant's behalf raising various IAC claims. A PCRA hearing was conducted on May 2, 2016, at which Appellant, and his trial and direct appeal counsel, Mitchell Shahen, Esq., both testified. On July 14, 2016, the PCRA court issued an order and opinion denying Appellant's petition.

Appellant filed a timely notice of appeal, as well as a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On September 19, 2016, the PCRA court issued a responsive opinion, relying in large part on the rationale set forth in its July 14, 2016 opinion denying Appellant's petition. In Appellant's brief to this Court, he presents the following three issues for our review:

> I. Whether there was ineffective assistance of counsel in failing to challenge on appeal the sufficiency of the evidence on receiving stolen property - firearm[?]
>
> II. Whether there was ineffective assistance of counsel in failing to request the trial court to properly and adequately charge the jury and/or failing to object to the trial court improperly and inadequately charging the jury regarding (a) receiving stolen property - guilty knowledge, (b) constitutional limits on using inferences in criminal cases, (c) direct and circumstantial evidence - additional request, and (d) unanimity required for one of alternative theories of guilt of receiving stolen property[?]
>
> III. Whether there was ineffective assistance of counsel in failing to object to the exhibits of experts being in possession of the jury during deliberations[?]

Appellant's Brief at 4 (unnecessary capitalization omitted).

First, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's

determination is supported by the evidence of record and whether it is free

of legal error." ***Commonwealth v. Morales***, 701 A.2d 516, 520 (Pa. 1997)

(citing ***Commonwealth v. Travaglia***, 661 A.2d 352, 356 n.4 (Pa. 1995)).

Where, as here, a petitioner claims that he received ineffective assistance of

counsel, our Supreme Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves,
> by a preponderance of the evidence, that his conviction or
> sentence resulted from the "[i]neffective assistance of counsel
> which, in the circumstances of the particular case, so
> undermined the truth-determining process that no reliable
> adjudication of guilt or innocence could have taken place." 42
> Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to
> rebut that presumption, the PCRA petitioner must demonstrate
> that counsel's performance was deficient and that such
> deficiency prejudiced him." [***Commonwealth v.***] ***Colavita****,* 606
> Pa. [1,] 21, 993 A.2d [874,] 886 [(Pa. 2010)] (citing
> ***Strickland***[ ***v. Washington***, 104 S.Ct. 2053 (1984)]). In
> Pennsylvania, we have refined the ***Strickland*** performance and
> prejudice test into a three-part inquiry. *See* [***Commonwealth***
> ***v.***] ***Pierce****,* [515 Pa. 153, 527 A.2d 973 (Pa. 1987)]. Thus, to
> prove counsel ineffective, the petitioner must show that: (1) his
> underlying claim is of arguable merit; (2) counsel had no
> reasonable basis for his action or inaction; and (3) the petitioner
> suffered actual prejudice as a result. ***Commonwealth v. Ali****,*
> 608 Pa. 71, 86, 10 A.3d 282, 291 (2010). "If a petitioner fails to
> prove any of these prongs, his claim fails." ***Commonwealth v.***
> ***Simpson****,* [620] Pa. [60, 73], 66 A.3d 253, 260 (2013) (citation
> omitted). Generally, counsel's assistance is deemed
> constitutionally effective if he chose a particular course of
> conduct that had some reasonable basis designed to effectuate
> his client's interests. *See Ali, supra*. Where matters of strategy
> and tactics are concerned, "[a] finding that a chosen strategy
> lacked a reasonable basis is not warranted unless it can be
> concluded that an alternative not chosen offered a potential for
> success substantially greater than the course actually pursued."
> ***Colavita****,* 606 Pa. at 21, 993 A.2d at 887 (quotation and
> quotation marks omitted). To demonstrate prejudice, the
> petitioner must show that "there is a reasonable probability that,
> but for counsel's unprofessional errors, the result of the

proceedings would have been different." ***Commonwealth v. King***, 618 Pa. 405, 57 A.3d 607, 613 (2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" ***Ali***, 608 Pa. at 86–87, 10 A.3d at 291 (quoting ***Commonwealth v. Collins***, 598 Pa. 397, 957 A.2d 237, 244 (2008) (citing ***Strickland***, 466 U.S. at 694, 104 S.Ct. 2052)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

Appellant first argues that Attorney Shahen was ineffective for failing to challenge, on direct appeal, the sufficiency of the evidence to prove the 'guilty knowledge' element of his receiving stolen property conviction. More specifically, Appellant stresses that to convict an individual of receiving stolen property, the Commonwealth must prove, *inter alia*, that the person possessed the property "knowing that it has been stolen, or believing that it has probably been stolen…." 18 Pa.C.S. § 3925(a). Appellant contends that in this case, there was insufficient evidence to prove that he knew the property at issue - *i.e.*, the firearm - was stolen, or that he believed it was probably stolen. According to Appellant, there was no evidence linking him to the firearm, other than his presence in the vehicle in which it was found. He also argues that the fact that the firearm was stolen three years prior to his arrest supported that he did *not* know that it was stolen. Thus, Appellant asserts that, had Attorney Shahen raised these sufficiency-of-the-evidence arguments on direct appeal, this Court would have reversed his receiving stolen property conviction.

In rejecting this claim, the PCRA court concluded both that Appellant's sufficiency challenge was meritless, and that Attorney Shahen had a reasonable basis for not raising this issue on direct appeal. Because we agree, for the reasons stated *infra*, with the court's determination on the reasonable basis prong, we need not decide whether Appellant's sufficiency claim has arguable merit, or whether Appellant was prejudiced by counsel's conduct. ***See Simpson***, 66 A.3d at 260.

In regard to the reasonable basis prong, we begin by noting:

> When assessing whether counsel had a reasonable basis for his act or omission, the question is not whether there were other courses of action that counsel could have taken, but whether counsel's decision had any basis reasonably designed to effectuate his client's interest. As the Commonwealth accurately states, this cannot be a hindsight evaluation of counsel's performance, but requires an examination of "whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect [the] defendant's interests." Our evaluation of counsel's performance is "highly deferential."

***Commonwealth v. Williams***, 141 A.3d 440, 463 (Pa. 2016), (internal citations omitted).

In concluding that Attorney Shahen had a reasonable basis for not raising a sufficiency challenge to the 'guilty knowledge' element of Appellant's receiving stolen property conviction, the PCRA court reasoned:

> The [Pennsylvania] Supreme Court's decision in ***Williams*** is relevant to this [c]ourt's [o]pinion with regard to prior counsel's reasonable strategic basis. In ***Williams***, our Supreme Court held:
>
>> It is true that "arguably meritorious claims may be omitted in favor of pursuing claims which, in the exercise of

- 9 -

appellate counsel's objectively reasonable professional judgment, offer a greater prospect of securing relief." [*Commonwealth v.*] *Bracey*, 795 A.2d [935,] 950 [(Pa. 2001)] (citing *Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). "Appellate counsel need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Id.* at 950–51 (quoting [*Smith v.*] *Robbins*, 528 U.S. [259,] 288 [(2000)]…).

*Id.* at [471]. … [Attorney Shahen] indicated at the evidentiary hearing that he had considered[,] in deciding not to raise on direct appeal the issue of sufficiency of the evidence on [Appellant's] receiving stolen property charge, case law and a quote by Judge Aldisert that too many issues on appeal detracts from the process of review. The most recent applicable Pennsylvania Supreme Court case at the time [of counsel's decision], which this [c]ourt cited in its [July 14, 2016 o]pinion, was the case of *Com[monwealth] v. Jones*, … 815 A.2d 598 ([Pa.] 2002). *Jones* held that counsel may reasonably forego even claims with merit as part of a strategic decision. *Id.* at … 613 [(stating that, "as the U.S. Supreme Court has recognized, appellate counsel is not constitutionally obliged to raise every conceivable claim for relief. Counsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgment, offered a greater prospect of securing relief") (citation omitted)]. The decision in *Jones* was…, however, only a plurality opinion. *Williams*, on the other hand, now commands a majority of the Court and so is binding precedent which further supports the [c]ourt's analysis that [Attorney Shahen's] decision not to raise [this specific sufficiency] issue on appeal was part of a reasonable strategic decision which defeats [Appellant's] claim of ineffective assistance. Indeed, given the fact that [Appellant's] aggregate sentence in this case would not have been affected even if [he] had been successful on appeal on that issue,[1] the [c]ourt can well understand [Attorney Shahen's] strategy in

---

[1] Appellant received a concurrent term of incarceration for his receiving stolen property offense.

- 10 -

deciding not to pursue that claim on appeal where it might … only detract from more important issues.

PCRA Court Opinion, 9/19/16, at 3-4 (some citations omitted).

In attacking the PCRA court's rationale, Appellant claims that Attorney Shahen never testified at the PCRA hearing that he made a strategic decision not to include the at-issue sufficiency claim on direct appeal. The same was true in **Williams**, and led to our Supreme Court's concluding that appellate counsel in that case did **not** express a reasonable basis for failing to raise a particular claim on appeal. **See Williams**, 141 A.3d at 471 (concluding that counsel failed to state a reasonable basis where "appellate counsel did not testify that he made a reasoned decision to exclude [the] particular claim … in an effort to winnow down his arguments to those that had the highest chance for success on appeal"). Instead, the attorney in **Williams** "testified that he had no independent recollection regarding the issues he raised on appeal or why he chose the issues he raised…." **Id.**

We disagree with Appellant that Attorney Shahen's PCRA hearing testimony was similar to the attorney's testimony in **Williams**. Attorney Shahen specifically testified that when deciding on what issues to present in Appellant's direct appeal, he recalled considering the following, oft-quoted remark by Judge Ruggiero Aldisert:

> With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors.... [W]hen I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a

- 11 -

> presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Commonwealth v. Showers*, 782 A.2d 1010, 1016 (Pa. Super. 2001) (internal citations omitted). *See also* PCRA Hearing, 5/2/16, at 23 (counsel's testifying that he considered the above stated quote by Judge Aldisert in deciding what issues to raise in Appellant's appeal).

Attorney Shahen also testified that in his experience, challenges to the sufficiency of the evidence are "hard to win." PCRA Hearing at 24. Nevertheless, he *did* challenge the sufficiency of the evidence to prove the possessory element of Appellant's receiving stolen property and firearm convictions on direct appeal.[2] Counsel explained that he chose to raise this sufficiency-of-the-evidence claim because the primary defense at trial was that Appellant did not possess the firearm found in the car. *Id.* at 26. Considering the Judge Aldisert quote, Attorney Shahen did not want to raise an additional claim that Appellant did not know the gun was stolen. *Id.* at 23, 25.

---

[2] Attorney Shahen also raised two other issues on direct appeal, a challenge to the weight of the evidence to support Appellant's PWID conviction, and a claim that the court erred by qualifying Robert Kukosky, of the DNA crime lab, as an expert witness. *See Williams*, No. 527 WDA 2014, unpublished memorandum at 6. Appellant does not argue that these claims, or the sufficiency challenge to the possessory element of his receiving stolen property and firearm offenses, were weaker than a challenge to the sufficiency of the evidence to prove the 'guilty knowledge' element of receiving stolen property.

In view of this testimony, we conclude that the record supports the PCRA court's determination that Attorney Shahen strategically chose to omit, on direct appeal, a sufficiency-of-the-evidence claim pertaining to Appellant's knowledge that the gun was stolen. We further conclude that *Jones* and *Williams* support the PCRA court's decision that Attorney Shahen's strategy was reasonable. Thus, Appellant's first IAC claim is meritless.

Next, Appellant takes issue with Attorney Shahen's failure to object to, or request, four specific jury instructions. Notably, in three of Appellant's jury-instruction claims, he argues that Attorney Shahen was ineffective for not requesting specific instructions that Appellant's *current counsel has created*. We fail to see how we could deem Attorney Shahen ineffective for not requesting instructions that are the product of current counsel's imagination. In any event, however, we conclude that the well-reasoned opinion of the Honorable Kim Tesla of the Court of Common Pleas of Beaver County accurately disposes of Appellant's arguments that Attorney Shahen acted ineffectively by failing to request certain jury instructions. *See* PCRA Court Opinion, 7/14/16, at 21-25. Accordingly, we adopt Judge Tesla's opinion as our own, and conclude that Appellant's second IAC issue is meritless on that basis.

Lastly, Appellant contends that Attorney Shahen was ineffective for not objecting when the trial court permitted the jury to review certain expert reports during deliberations. Appellant focuses his argument on one

- 13 -

particular report, the expert report regarding the DNA found on the gun in this case. Essentially, Appellant avers that allowing the jury to possess this report - which contained "astronomical percentages that [Appellant's] DNA was on the stolen firearm" - weakened his defense that Slappy possessed the firearm. Appellant's Brief at 31 ("Gaining an admission [during the cross-examination of the DNA expert] that [Slappy] could have possessed the firearm even though his DNA was not on it did not, and could not, address the finding that [Appellant's] DNA was found on the firearm. Allowing the jury to possess the DNA Report with those astronomical percentages of [Appellant's] DNA on it and therefore possessing it cannot be justified as effective under any circumstance.").

Appellant's argument is unconvincing. At trial, the DNA expert testified that the probability that the DNA found on the gun matched someone other than Appellant was "1 in 110 sextillion within the Caucasian population[,]" and "[1] in 3.9 quintillion" out of the African-American population. N.T. Trial, 9/9/13, at 70. Thus, the jury heard the same numbers that were contained in the expert report that the court permitted them to review during deliberations. Moreover, Appellant conceded that his DNA was on the firearm, explaining that he had touched the weapon after Slappy threw it on his lap and he picked it up to throw it back. N.T. Trial, 9/9/13, at 175-177. In closing arguments, Attorney Shahen again acknowledged that Appellant's DNA was on the weapon, and argued that the DNA was there because Appellant had touched the weapon when throwing it

- 14 -

back at Slappy. *See* N.T. Trial, 9/10/13, at 62. Counsel further stressed that, on cross-examination, the DNA expert had admitted that "the lack of DNA [from Slappy] did not mean that … Slappy[] did not handle the firearm." *Id.*

In light of this testimony and argument by Attorney Shahen, we fail to see how Appellant was prejudiced by the jury's having, during deliberations, a report that stated the 'astronomical percentages' regarding the probability that it was Appellant's DNA on the firearm. The jury heard those same numbers during the DNA expert's testimony, and Appellant conceded that his DNA was on the weapon. Therefore, Appellant has not demonstrated he was prejudiced when Attorney Shahen did not object to the jury's reviewing the DNA expert's report during deliberations.

In sum, we agree with the PCRA court that Appellant's three IAC claims are meritless. Accordingly, the court did not err in denying his petition.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2017

- 15 -

IN THE COURT OF COMMON PLEAS OF BEAVER COUNTY
PENNSYLVANIA
CRIMINAL DIVISION – LAW

COMMONWEALTH OF PENNSYLVANIA,     :

    VS.     :

                             CASE NO.   384 OF 2013

KAMMERON MCKENZIE,     :

    DEFENDANT     :

## OPINION

TESLA, K.                                                   JULY 14, 2016

This Opinion and the following Order are entered in the above-captioned case in response to Defendant's amended PCRA Petition seeking relief under the Post-Conviction Collateral Relief Act (hereinafter, "PCRA" or "the Act"). For the following reasons stated in this Opinion and Order, Defendant's amended PCRA Petition is denied pursuant to Pa.R.Crim.P. 908(D)(1).

### FACTS AND PROCEDURAL HISTROY

The facts of this case are presented in brief, as the underlying facts and procedural history of this case are presented in greater detail in the Court's 1925(a) Opinion, dated May 15, 2014. Those facts and others are also quoted in the Superior Court's Opinion which affirmed this Court on appeal. Com. v. McKenzie, No. 527 WDA 2014, at 2-6 (Pa.Super., Jan. 9, 2015) (Memorandum Decision).

On December 1, 2012 at approximately 1:30 a.m., Officer David Johnson of the City of Beaver Falls Police Department was on patrol when he saw Anthony Slappy pumping gas into a white Cadillac at the A-Plus gas station in Beaver Falls. Officer Johnson also saw another individual in the passenger seat, who was later identified as Defendant. After pumping the gas, Slappy entered the driver's side of the Cadillac and drove from the parking lot. Officer Johnson saw that the taillights of the vehicle were not illuminated, followed, and then activated his

overhead lights and attempted to initiate a traffic stop. When the vehicle failed to stop, Officer Johnson notified dispatch. The Cadillac continued traveling south on Tenth Avenue as it was pursued by Officer Johnson and now Captain Martin of the Beaver Falls Police, who blocked the driver's attempts to turn onto several side streets. Eventually the car passed through a "Do Not Enter" sign and onto a one-way section of the street. As the Cadillac continued traveling south on Tenth Avenue, Officer Johnson saw Defendant moving around and throwing a white substance out of the window which was later found to be cocaine. The Cadillac was ultimately intercepted and stopped by Captain Martin and Officer Johnson.

After stopping the vehicle, Officer Johnson and Captain Martin approached the Cadillac with their weapons drawn. Officer Johnson recognized the Defendant as the passenger of the Cadillac. Defendant was leaning to the left and bending over his seat toward the floor of the Cadillac. Officer Johnson ordered Defendant to show his hands and, after initially refusing to comply, Defendant raised his hands. Knowing that there was an active warrant for Defendant's arrest, Officer Johnson removed Defendant, searched him, and arrested him. While doing so, Officer Johnson observed a white substance on the window of the Cadillac. This substance later tested positive as cocaine. The search also uncovered marijuana, $640, and a cell phone. After Captain Martin removed the driver, Slappy, from the Cadillac, the officers discovered an unloaded .45 caliber Taurus 24/7 Pro firearm in the vehicle. Officer Johnson described the location of the firearm:

> [W]e did observe that there was a firearm also under the, what would be the driver's seat post, next to the hump. So if I would be sitting in the driver's seat, there, like, the bolts where the seat is bolted to the floor, there's a firearm that would be slid down on the side of the hump right against that post.

T.T., Vol. II, 9/6/13, at 94-95. A loaded magazine for the firearm was also found, as well as another cell phone and a .45 caliber bullet on the passenger side floorboard where Defendant had

2

been seated. An additional white substance was found inside the vehicle which later tested to be cocaine. Officer Johnson and Captain Martin then searched the area where Defendant and Slappy had been pursued, and found more crack cocaine which had been thrown from the passenger side window. After obtaining a search warrant, even more crack cocaine was found inside the vehicle. A search of the firearm's serial number revealed that it had been reported stolen, and neither Defendant nor Slappy were licensed to possess the weapon. DNA tests were taken of Defendant and Slappy. The firearm, ammunition, controlled substances, and DNA samples from Defendant and Slappy were subsequently transferred to the Pennsylvania State Police for further testing. Defendant filed a suppression motion which was ultimately denied.

A consolidated trial of both Defendant and Slappy commenced on September 6, 2013 and concluded on September 11, 2013, with the jury finding Defendant guilty of all the charges against him, to wit, receiving stolen property, person not to possess a firearm, firearms not to be carried without a license, possession with intent to deliver cocaine, possession of cocaine, and possession of a small amount of marijuana. After Defendant's trial, the Commonwealth sought a mandatory sentence under 42 Pa.C.S.A. § 9712.1 because of Defendant's drug conviction and possession of a firearm. Defendant was given an aggregate sentence of seven to fourteen years. As part of this sentence, Defendant was sentenced on count four, possession with intent to deliver cocaine, to a term of imprisonment of five to ten years. Defendant then filed a Post Sentence Motion seeking modification and reconsideration of his sentence as well as a supplemental Post Sentence Motion which included a Motion for Judgment of Acquittal, a Motion in Arrest of Judgment, and a Motion for New Trial. Following argument, the Court entered an Order granting modification and reconsideration of the sentence, denying Defendant's other motions, and scheduling a re-sentencing hearing. The Court then re-sentenced Defendant to

3

an aggregate term of imprisonment of seven to fourteen years, which included a sentence of twenty-seven months to fifty-four months on count four, possession with intent to deliver cocaine, a sentence that did not include the mandatory sentence pursuant to Alleyne v. United States, 133 S.Ct. 2151, 2155 (2013).

Defendant then appealed the Court's Re-Sentence Order, challenging the sufficiency of the evidence, the weight of the evidence, the qualification of the Commonwealth's DNA expert, the denial of his suppression motion, and the aggregate sentence imposed. On January 9, 2015, the Superior Court affirmed this Court on all points. McKenzie, No. 527 WDA 2014, at 2-6. Defendant then petitioned the Supreme Court of Pennsylvania for allowance of appeal. His Petition was denied on August 31, 2015.

On October 30, 2015, Defendant filed the instant PCRA Petition. On November 9, 2015, the Court entered an Order appointing counsel, directing counsel to file an amended Petition, and directing the Commonwealth to file an Answer to that amended Petition within twenty days thereafter. On December 23, 2015, Defendant filed a Motion for Extension which the Court granted. Defendant then filed an Amendment to Post Conviction Relief Act Petition and Motion to Schedule P.C.R.A. Hearing on February 12, 2016. The Court then scheduled a hearing and the Commonwealth filed a Brief in Opposition. At the hearing, held on May 2, 2016, the Court heard testimony from Defendant's prior counsel who represented him at trial and on direct appeal. The Court also heard testimony from Defendant.

## ANALYSIS

Defendant's Amended PCRA Petition raises eight issues, seven of which are claims of ineffective assistance of counsel. Defendant complains that his counsel was ineffective by (1) failing to litigate the offense gravity score used, (2) failing to challenge on appeal the sufficiency

4

of the evidence on Defendant's receiving stolen property charge, (3) failing to make a motion to strike testimony, (4) failing to object to testimony regarding latent prints, (5) failing to object to exhibits being allowed in the jury room during deliberations, (6) failing to request additional jury instructions, and (7) allegedly advising Defendant to reject the plea offer and proceed to trial. Defendant also complains that he was sentenced on charges of possession with intent to deliver as well as possession, and that these two charges should have merged for sentencing purposes. First the Court will review the timeliness of the instant Petition, after which the Court will address each specific argument in turn.

## A. Defendant's Petition is timely and therefore the Court has jurisdiction to consider the merits.

Before the Court can address the merits of Defendant's arguments, it must first determine whether Defendant's Petition was timely filed under the Act. Any petition for PCRA relief, "including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final," unless the Defendant alleges and proves that one of three enumerated exceptions applies. 42 Pa.C.S.A. § 9545(b)(1). "A judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(2).

> It is well-settled that the PCRA's time restrictions are jurisdictional in nature. As such, this statutory time-bar implicates the court's very power to adjudicate a controversy and prohibits a court from extending filing periods except as the statute permits. Accordingly, the period for filing a PCRA petition is not subject to the doctrine of equitable tolling; instead, the time for filing a PCRA petition can be extended only by operation of one of the statutorily enumerated exceptions to the PCRA time-bar.

> The exceptions to the PCRA time-bar are found in Section 9545(b)(1)(i)-(iii) (relating to governmental interference, newly discovered facts, and newly

5

recognized constitutional rights), and it is the petitioner's burden to allege and prove that one of the timeliness exceptions applies. Whether a petitioner has carried his burden is a threshold inquiry that must be resolved prior to considering the merits of any claim. Further, it is well-settled that couching a petitioner's claims in terms of ineffectiveness will not save an otherwise untimely filed petition from the application of the time restrictions of the PCRA.

Com. v. Robinson, 715 CAP, --- A.3d ---, 2016 WL 3388402, at *5 (Pa. June 20, 2016) (external citations and quotation marks omitted).

In this case, Defendant's Petition to the Supreme Court was denied on August 31, 2015 and his *pro se* PCRA petition was filed on November 9, 2015, a little over two months later. His Petition is thus well within the one-year time period following the Supreme Court's denial of his petition for allowance of appeal. Thus Defendant's Petition is timely and the Court therefore has jurisdiction to consider his Petition.

**B. Defendant's claims of ineffective assistance of counsel have no arguable merit and therefore his counsel was not ineffective.**

Having determined that Defendant's Petition is timely filed, the Court must next determine whether Defendant is eligible for relief under the Act. To be eligible for PCRA relief, Defendant must plead and prove by a preponderance of the evidence four general requirements. 42 Pa.C.S.A. §§ 9541-9546. First, he must have been convicted of a crime under Pennsylvania law and be currently serving a sentence of incarceration, parole, or probation. 42 Pa.C.S.A. § 9543(a). Second, the conviction and sentence must have resulted from at least one of the errors and/or violations elucidated in 42 Pa.C.S.A. § 9543(a)(2). Id. Third, the allegation of error must not have been previously litigated or waived. Id. Fourth, Defendant must demonstrate that the failure to litigate the claim could not have been "the result of any rational, strategic or tactical decision by counsel." Id.

6

In this case Defendant was convicted of receiving stolen property, person not to possess a firearm, firearms not to be carried without a license, possession with intent to deliver cocaine, possession of cocaine, and possession of a small amount of marijuana. The issue of Defendant's prior counsel's ineffectiveness has not been previously litigated or waived. Com. v. Grant, 572 Pa. 48, 67, 813 A.2d 726, 738 (2002) ("We now hold that, as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. . . Simply stated, a claim raising trial counsel ineffectiveness will no longer be considered waived because new counsel on direct appeal did not raise a claim related to prior counsel's ineffectiveness."). Further, the failure to previously litigate prior counsel's effectiveness is not an issue in this case because trial counsel continued as Defendant's appellate counsel. Thus the instant PCRA Petition is Defendant's first and appropriate opportunity to challenge the effectiveness of his trial counsel. *See, e.g.,* Com. v. Simpson, 620 Pa. 60, 72, 66 A.3d 253, 260 (2013).

The only issue as to Defendant's eligibility for relief, therefore, is whether he has plead and proved by a preponderance of the evidence a cognizable error. 42 Pa.C.S.A. § 9543(a)(2). Specifically in this case, the issue Defendant raises is whether there was "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Id.

In Commonwealth v. Simpson, the Supreme Court of Pennsylvania explained the requirements of an ineffective assistance of counsel claim.

> The defendant's right to counsel guaranteed by the Sixth Amendment to the United States Constitution and Article I, § 9 of the Pennsylvania Constitution is violated where counsel's performance so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. In this regard, we apply a three-pronged test for determining whether trial counsel was ineffective. . . The Pierce test requires a PCRA petitioner to prove: (1) the

7

underlying legal claim was of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and (3) the petitioner was prejudiced— that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different. If a petitioner fails to prove any of these prongs, his claim fails. Moreover, counsel is presumed to be effective, and a petitioner must overcome that presumption to prove the three Strickland/ Pierce factors.

Simpson, 620 Pa. at 73, 66 A.3d at 260 (external citations and quotation marks omitted). "Respecting prejudice, '[a] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" Com. v. Ali, 608 Pa. 71, 86-87, 10 A.3d 282, 291 (2010) (citing Com. v. Collins, 598 Pa. 397, 957 A.2d 237, 244 (2008)).

Defendant complains that his counsel was ineffective for seven different reasons. The Court will now consider each of Defendant's claims in turn.

1. *The Offense Gravity Score was correct, and therefore Defendant's counsel was not ineffective for failing to litigate it.*

Defendant complains in his amended Petition that nothing in the record shows that he possessed over ten grams of cocaine. Defendant asserts that the record shows only that he possessed 9.74 grams of cocaine, and that his Offense Gravity Score under the sentencing guidelines should have been 7 instead of 8 due to having cocaine of less than ten grams.

In fact, Defendant expressly admitted in his testimony during trial to having over ten grams of cocaine that night.

Q. Are you taking responsibility for all of the cocaine?

A. Yes, it was mine.

Q. Every bit of it?

A. Yes.

Q. Over 10 grams of cocaine?

8

A. Yes.

. . .

Q. And you said you got over 10 grams of a cocaine rock?

A. Yes.

T.T, Vol. III, 9/9/13, at 186-87. Defendant then testified upon further cross-examination by the Commonwealth:

Q. How much did you pay for the rock, the over 10 grams of cocaine?

A. Like, $300.

Q. $300 for over 10 grams of cocaine?

A. Yes.

Id. at 191. Indeed, the Superior Court's Memorandum Opinion also expressly recognized that Defendant possessed ten grams of cocaine. McKenzie, No. 527 WDA 2014, at 6, 15. In addition to the officer's testimony of seeing Defendant throw a white substance out of the window during the pursuit, Defendant himself also admitted to breaking up the cocaine and throwing pieces of it out of the window. T.T, Vol. III, 9/9/13, at 173-74.

In this case the record is clear, based upon Defendant's own admission, that he possessed over ten grams of cocaine. Even Defendant's current counsel admitted in closing argument that the record supports such a finding. Tr. PCRA Hr'g, 5/2/16, at 108-109. Further, Defendant admitted to attempting to dispose of the cocaine by throwing it out of the window during a nighttime vehicle pursuit by the police. Because the evidence showed that Defendant, by his own repeated admissions, possessed over ten grams of cocaine that night, the use of an OGS score of 8 was correct and his counsel was not ineffective for failing to object.

*2. The evidence of Defendant's receiving stolen property charge was sufficient, and therefore Defendant's counsel was not ineffective for not raising it on appeal.*

Defendant claims that his prior counsel was ineffective for failing to raise as an issue on appeal the sufficiency of the evidence of his receiving stolen property charge. "A person is guilty of theft [by receiving stolen property] if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a). Thus "[t]he elements of receiving stolen property may be stated as: (1) intentionally acquiring possession, control or title, retaining, disposing, or lending on the security of movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) intent to deprive permanently." Com. v. Young, 2011 PA Super 277, 35 A.3d 54, 63.

> [A] permissible inference of guilty knowledge may be drawn from the unexplained possession of recently stolen goods without infringing upon an accused's right of due process or his right against self-incrimination, as well as other circumstances, such as the accused's conduct at the time of arrest. Nonetheless, the mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen. This additional evidence can include the nature of the goods, the quantity of the goods involved, the lapse of time between possession and theft, and the ease with which the goods can be assimilated into trade channels. Further, whether the property has alterations indicative of being stolen can be used to establish guilty knowledge. Finally, even if the accused offers an explanation for his possession of stolen property, the trier of fact may consider the possession as unexplained if it deems the explanation unsatisfactory.

Com. v. Foreman, 2002 PA Super 125, ¶ 17, 797 A.2d 1005, 1012-13 (external citations and quotation marks omitted). Other factors to consider "include but are not limited to the unexplained possession of recently stolen property, flight from the police or other evidence

10

indicating an attempt to avoid capture and the condition of the property indicating a theft." Com. v. Carson, 405 Pa.Super. 492, 497, 592 A.2d 1318, 1321 (1991).

While the Superior Court did not reach the issue of whether the Defendant knew or believed the firearm was stolen, it did reach the question of whether there was sufficient evidence that Defendant constructively possessed the firearm. McKenzie, No. 527 WDA 2014, at 9 ("The trial court persuasively reasons that there was 'ample' evidence of McKenzie's constructive possession of the firearm[.]"). The record is also clear that the firearm was stolen. Thus the only issue is whether the evidence was sufficient to show that Defendant knew or believed that the firearm was stolen.

Defendant argues that there was insufficient evidence to show that Defendant knew or believed that the firearm had been stolen, and thus that he should not have been convicted of receiving stolen property. Although this issue was not addressed in Defendant's Appellate Brief, this Court did address the issue in its 1925(a) Opinion of May 15, 2014:

> The jury was entitled to consider the nature of the stolen property in reaching its verdict on the charge of receiving stolen property. As a firearm, the Taurus 24/7 Pro .45 caliber was subject to a highly regulated process to achieve legal transfer of ownership. As a convicted felon, Defendant was unable to undergo this process, raising the possibility that Defendant acquired the firearm through unlawful means. Furthermore, there is no evidence of record that Defendant had any ownership interest in the firearm. Nevertheless, the evidence presented indicates that Defendant was in possession of the firearm and that he was attempting to conceal the firearm from law enforcement. The absence of any documentation demonstrating the legality of Defendant's possession, Defendant's ineligibility to possess the firearm, and his attempts to conceal the firearm from the police permits an inference of guilty knowledge. Therefore, the Court concludes that sufficient evidence was presented at trial for the jury to find Defendant guilty of receiving stolen property.

Court's 1925(a) Opinion, at 13.

Defendant possessed the firearm, a highly regulated item, which requires certain steps under both state and federal law to be taken in order to effect a lawful transfer. *See, e.g.,* 18

11

Pa.C.S.A. § 6111(c) ("Any person who is not a licensed importer, manufacturer or dealer and who desires to sell or transfer a firearm to another unlicensed person shall do so only upon the place of business of a licensed importer, manufacturer, dealer or county sheriff's office . . . ."); 18 U.S.C.A. § 922(g) (prohibiting, *inter alia*, convicts and unlawful users of controlled substances from transferring or possessing a firearm). Defendant possessed this firearm without a license and as a person who could not lawfully possess a firearm under both state and federal law. He attempted to conceal the weapon after throwing drugs out of the window while being pursued by a police cruiser. He then attempted to place the blame on his co-defendant.

The evidence clearly showed there were two individuals in the vehicle and one firearm, and each individual gave his explanation at trial. There was considerable evidence at trial that would support an inference of Defendant's guilty knowledge that the firearm was probably stolen: (1) the nature of the item, a firearm; (2) the difficulty with which that item could be legally transferred; (3) the fact that the firearm was, in fact, reported stolen to the police; (4) Defendant's ineligibility to possess a firearm; (5) Defendant's actions in directing Slappy to keep driving despite the police pursuit; and (6) Defendant's actions taken to conceal the firearm and dispose of the drugs he was carrying at the time. *See* Foreman, 2002 PA Super 125, ¶ 17, 797 A.2d at 1012-13.

While Defendant attempted to explain away his DNA on the weapon and claimed that it belonged to Slappy, and that Slappy had just tossed it into his lap, the jury was entitled, as Foreman states, to disregard an unsatisfactory explanation. Id. It did so. Applying the law stated in Foreman, it is clear that the jury made a credibility determination and was not convinced by Defendant's explanation. This Court does not believe that the evidence was insufficient for the jury to find that Defendant "had reason to believe that the property was stolen." Id. Because the

12

evidence was sufficient, Defendant's argument that his prior counsel was ineffective for not arguing that issue on appeal has no merit, and Defendant's prior counsel was therefore not ineffective.

3. *Defendant's counsel objected and was sustained and the jury was properly instructed by the Court, and therefore Defendant's counsel was not ineffective for failing to make a motion to strike.*

Defendant asserts that his counsel was ineffective for failing to make a motion to strike after his counsel's objection to testimony was sustained, and for failing to request a cautionary instruction. On direct examination of Officer Johnson by the Mr. Quinn for the Commonwealth, the following occurred:

Q. Is there anything about the appearance of the narcotics that stand out to you in this case?

A. The large quantity specifically. The fact that it was packaged individually and also in large chunks basically is typical of the type that would be delivered, not necessarily used for personal consumption.

MR. SHAHEN: Objection, Your Honor.

THE COURT: Side bar.

(WHEREUPON, the following proceedings were had at side bar:)

THE COURT: State your objection on the record.

MR. SHAHEN: Your Honor, I - -

THE COURT: Wait a second.

MR. SHAHEN: - - I thought we went over this yesterday. I was not given a report by anybody that indicated that he was going to say based upon the weight or size of the drugs that it's my opinion that he possessed it with the intent to deliver. I thought that was discussed.

My objection plainly is that I have not received an opinion from the Commonwealth that this officer was going to state that it was not, I don't believe

13

he said that at the preliminary hearing, and it's just also a discovery violation in not providing this opinion to me.

THE COURT: Mr. Phillis, do you have any objections?

MR. PHILLIS: Your Honor, I join in Mr. Shahen's objection as far as not being notified that the officer was going to give a, such specific statement.

THE COURT: Say that again.

MR. PHILLIS: That the officer was not going to give such an opinion nor is he qualified to give such an opinion.

THE COURT: Okay. Mr. Quinn, your response to the objections.

MR. QUINN: Your Honor, he is testifying based upon his experience as an officer. I am not qualifying him as an expert, and there are cases, you don't need an expert on every case. He is the investigating officer. He can testify as to his experience. We are dealing with a rock, okay. Mr. Shahen represented to the jury that it's personal consumption. You don't ingest a rock for personal consumption. He can testify that a rock is - -

THE COURT: Why is, if you have to qualify him saying that based upon his experience as a police officer in his previous cases, you are not asking lay testimony. You are asking him an expert opinion. Did you put that in your discovery?

MR. QUINN: I am not asking for an expert opinion.

THE COURT: Well, what you asking then? I don't understand. You're saying based upon his credentials at [sic] a police officer, why is that not an expert opinion?

MR. QUINN: Because he is testifying as a fact witness as to, that the substance is not packaged. It's, again, we are dealing with a rock. You don't - -

THE COURT: Sustained.

MR. QUINN: Before we go, Your Honor, my next question is the form of it. It's a rock. That can be broken. That needs to be broken down for personal - -

THE COURT: You are going to ask him what?

MR. QUINN: About the form. I think the objection was as to the weight.

14

THE COURT: You can ask him questions about the form and about the circumstances of the weight and so forth. Although if you haven't given the defense a discovery letter indicating that he is going to testify based upon the experience that this is consistent with possession with intent to deliver, I have to agree with defense here.

I asked specifically at the pretrial conference did you ask anyone about how much is this worth, are you going offer any expert opinion. Your answer was no.

MR. QUINN: Right.

THE COURT: That is exactly what you're doing.

MR. QUINN: Just - -

THE COURT: You can ask him to describe it, but you are not going to have an opinion in regards to whether in his opinion as a police officer is it consistent with possession with intent to deliver. That is my ruling.

MR. QUINN: Okay.

(WHEREUPON, the side bar proceedings were concluded, and thereafter the following proceedings were had in open Court:)

THE COURT: My ruling is I have sustained the objection of the defense, but I have indicated that the Commonwealth, they may continue their question in compliance with my ruling. Mr. Quinn.

MR. QUINN: Thank you, Your Honor.

T.T., Vol. II, 9/6/13, at 98-102.

Thus Defendant's trial counsel made a timely objection, argument was heard at sidebar out of the hearing of the jury, the objection was sustained, and the jury was informed afterwards that the objection by Defendant's counsel was sustained. It should be noted that Officer Johnson was the very first witness heard at trial. Immediately prior to his testimony, the jury heard earlier that morning the statements of counsel and preliminary instructions from the Court. In its instructions, given that very morning, the Court instructed the jury as follows:

15

A part of my job as judge is to rule on objections to evidence made by counsel. If I decide that evidence is admissible, I will overrule the objection. This simply means that you're entitled to hear and consider that evidence.

On the other hand if I decide the evidence is inadmissible, I will sustain the objection. This means that you are not entitled to hear that evidence.

Sometimes I may order evidence stricken from the record after you hear it. *Whether I sustain the objection or I say that the evidence is stricken from the record, you must completely disregard that evidence when deciding the case.*

You will see on occasions that counsel and I may have to deal with matters that you're not supposed to hear or know about. When one of those matters come up I may say to counsel, well, I will do it at side bar or sometimes I'll ask to go in chambers or I'll clear the courtroom.

When I do that, please do not try to guess what we are talking about. You're only entitled to consider the evidence received at trial. Those are evidentiary rulings that I have to make outside of your hearing.

Id. at 52-53 (emphasis added).

Therefore it is clear that the jury had already been instructed that very morning that anything which may have been heard was to be completely disregarded once the objection was sustained. "'The jury is presumed to have followed the court's instructions.'" Com. v. Chmiel, 612 Pa. 333, 395, 30 A.3d 1111, 1147 (2011) (citing Com. v. Flor, 606 Pa. 384, 998 A.2d 606, 632 (2010)). In addition, Defendant's prior counsel, in his closing argument to the jury, reminded them of that instruction, and that they could not consider that evidence. T.T., Vol. IV, 9/10/13, at 47-48. Thus it is unambiguous that the jury was instructed as to its duty to disregard that evidence. Because Defendant's counsel objected, the objection was sustained, the jury had already been properly instructed that it was to disregard such evidence where an objection was sustained, and Defendant's counsel argued and reminded the jury of that instruction in closing argument, Defendant's counsel was under no obligation to make a motion to strike, nor to seek further repeated cautionary instructions which the jury had already heard that morning. Because

16

the jury had already been properly instructed that very morning, Defendant's claim has no merit and his counsel was therefore not ineffective.

4. *Defendant's counsel received evidence of the latent prints analysis in discovery and agreed with its admission, and therefore Defendant's counsel was not ineffective for failing to object to its introduction.*

Defendant asserts that his prior counsel was ineffective for failing to object to testimony that there were no latent prints on the firearm. Defendant argues that his counsel was ineffective because, he claims, the lab report was not admitted or marked as an exhibit, the lab report was not disclosed in discovery, and the only evidence of the lab results was from hearsay testimony of Officer Johnson. Defendant also claims that, had his counsel objected, he could have argued that the test results would have been unfavorable to the Commonwealth and that the firearm likely had only Slappy's latent prints on it.

In fact, as shown at the PCRA Hearing, Defendant was provided the test results in discovery. Tr. PCRA Hr'g, 5/2/16 at 46-47, 56, 104-106; Com.'s Ex. 1. The actual lab results were not admitted at trial because both sides were content to make use of the testimony in order to argue their version of events. Tr. PCRA Hr'g, 5/2/16 at 46-47, 56, 104-106. Further, Defendant is incorrect in stating that only Officer Johnson testified regarding the latent prints. Detective Kevin Burau also testified regarding the testing for latent prints, as did forensic scientist Tina Smith. T.T., Vol. II, 9/6/13, at 207-208, 221; T.T., Vol. III, 9/9/13, at 24. Indeed, Defendant's counsel used the evidence of the absence of any latent prints in his closing argument to try to show that Slappy, rather than Defendant, possessed the firearm. T.T., Vol. IV, 9/10/13, at 60 ("Slappy had that gun, and it doesn't have to, you don't need to find his fingerprints because there were no fingerprints on it, not even Kam's.").

17

Even if Defendant's counsel had objected to admission of the evidence of the prints, he could not have argued that no testing for prints was done, or that the results would have been favorable to the Defendant, or that only Slappy's prints were on it. He could not ethically do this because he knew, in fact, that such statements would have been false, because he had received the lab reports and knew that no latent prints were found. "A lawyer shall not knowingly: (1) make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer. . . ." Pa.R.Prof.Conduct 3.3(a)(1). Further, the Comment to Rule 3.3 continues by stating:

> This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, *the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false.*

Pa.R.Prof.Conduct 3.3, Comment 2 (emphasis added). Defendant's prior counsel cannot be found ineffective for failing to do what an attorney is ethically prohibited from doing. Defendant's prior counsel, while zealously advocating for his client's interests, plainly recognized his ethical limitations as an attorney and his professional duty of candor to the Court. *See, e.g.,* Tr. PCRA Hr'g, 5/2/16, at 45, 53 ("Well, Mr. DiMartini, if I know a fact to be true how could I argue to the jury that Mr. Slappy's fingerprints are on that, that could have been on that. I don't know that that's ethically possible. If I know a fact to be true that they weren't on it, how could I, how could I go and argue, how could I argue that? . . . . I would not argue anything that I knew to be untrue."). This kind of advocacy not only preserves the defendant's rights, but also

18

maintains the credibility of both the attorney and the client to the jury and the Court, the essence of effective assistance of counsel.

To summarize, Defendant's claim that his prior counsel did not receive the actual lab results in discovery is factually erroneous.[1] Defendant's prior counsel did not object to the evidence because he found it favorable and chose to use it in his closing argument. Id. at 41-45, 54-56. Nor could Defendant's prior counsel have presented the alternative arguments which Defendant now proposes because Defendant's prior counsel is an officer of the court bound by an ethical duty of candor. Because Defendant's prior counsel received the latent print lab results in discovery and chose not to object to that evidence being presented at trial in order to use it to Defendant's advantage, Defendant's claim has no merit and his prior counsel was therefore not ineffective.

### 5. Sending exhibits into the deliberation room with the jury was within the Court's discretion, and therefore Defendant's counsel was not ineffective for failing to object.

Defendant argues that his counsel was ineffective for not objecting to certain reports being allowed into the deliberation room during the jury's deliberations. "Upon retiring, the jury may take with it such exhibits as the trial judge deems proper, except as provided in paragraph (C)." Pa.R.Crim.P. 646(A). Paragraph (C) does not prohibit reports prepared by expert witnesses. See Pa.R.Crim.P. 646(C) (prohibiting transcripts, confessions, informations, and general jury instructions).

In the case of Commonwealth v. Barnett, the Superior Court considered in detail claims by defendants that an exhibit should not have been sent back to the jury during deliberations.

---

[1] Defendant's present counsel admitted as much based upon the evidence presented at the PCRA hearing, essentially conceding this entire issue. Tr. PCRA Hr'g, 5/2/16, at 107.

19

<u>Com. v. Barnett</u>, 2012 PA Super 157, 50 A.3d 176, 193-95 (allowing a handwritten journal entry by a minor who was a sexual abuse victim to go back with the jury during deliberations was within the trial court's discretion). The court in <u>Barnett</u>, concluded that "Pennsylvania courts have permitted a myriad of items to be in the possession of juries during deliberations." <u>Id.</u> at 194.

> "Whether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." *Commonwealth v. Merbah*, 270 Pa.Super. 190, 411 A.2d 244, 247 (1979) (citing *Commonwealth v. Pitts*, 450 Pa. 359, 301 A.2d 646 (1973)); Pa.R.Crim.P. 1114 (renumbered 646, effective April 1, 2001).
>
>> The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury. If there is a likelihood the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice per se and the error is harmless.
>
> *Commonwealth v. Dupre*, 866 A.2d 1089, 1103 (Pa.Super.2005) (quoting *Commonwealth v. Strong*, 575 Pa. 433, 836 A.2d 884, 888 (2003)).

<u>Id.</u> Additionally, the Supreme Court has held that allowing expert witness exhibits to be sent back into the deliberation room is also a matter within the discretion of the trial court. <u>Com. v. Pitts</u>, 450 Pa. 359, 366, 301 A.2d 646, 650 (1973). *See also* <u>Com. v. Woodard</u>, 129 A.3d 480, 495 (Pa. 2015) (allowing autopsy report and medical records in a capital case to go with jury during deliberations was within discretion of the trial court); <u>Com. v. Kingsley</u>, 480 Pa. 560, 578, 391 A.2d 1027, 1036 (1978) (no error in allowing autopsy report into deliberations where no objection to introduction of report as evidence).

In this case, the exhibits are not prohibited, they were admitted into evidence, there was expert testimony given during the trial, the parties entered stipulations, both parties agreed to allow the exhibits to be sent back into the jury deliberation room, and the reports Defendant

20

complains of were by no means the only exhibits sent back. In short, there is nothing to indicate that undue emphasis was placed on the reports, or that they were allowed in over objection, or that they were detrimental to any other exhibit or evidence admitted. There appears nothing in the record to indicate any likelihood of prejudice or to suggest an abuse of the Court's discretion. Because allowing the exhibits to go with the jury during deliberations was within the Court's discretion, Defendant's argument that his prior counsel should have objected has no merit, and his prior counsel was therefore not ineffective.

6. *The Court gave all required standard instructions and the instructions Defendant now proposes that his counsel should have requested are neither standard nor accurate statements of the law, and therefore Defendant's counsel was not ineffective for failing to request them.*

Defendant argues that his prior counsel should have asked for additional instructions to be given to the jury. The Defense proposes some instructions of its own creation and also believes that the standard instruction under 15.3925C should have been given in addition to the other standard instructions given by the Court. The Court addresses each argument in turn.

Those instructions which Defendant has drafted and now proposes are not standard instructions, but rather are instructions drafted and proposed by Defendant's present counsel. They are new instructions which he believes should have been requested by Defendant's prior counsel. For example, one proposed non-standard instruction, which Defendant titles as "Constitutional Limits on Using Inferences in Criminal Cases," is contained in Defendant's Amended PCRA Petition on page 38. A portion of this proposed instruction reads:

> When two equally reasonable and mutually inconsistent inferences can be drawn
> from the same fact or set of facts, you are not be [sic] permitted to guess which
> inference to adopt because evidence consistent with two opposing propositions
> proves neither. You are not even permitted to consider an inference from a given

21

fact unless the inferred fact is at least more likely than not to flow from the proven fact on which it depends.

Def.'s Amendment to Post Conviction Relief Act Petition, at 38.

This is not the law. Defendant's amended Petition cites several cases in support of this proposed instruction. Ironically, the very first case which Defendant cites directly undermines his proposed instruction by stating that the jury as finder of fact is entitled to consider any legitimate inferences and, within its discretion, accept or reject them.

> [T]he trier of fact can reject the inference in whole or in part . . . the inference of guilt is simply a result that the triers of fact are Permitted to reach based on the evidence. We stress that the triers of fact are permitted to reach the inference, but they may also reject it, the result is within the jury's discretion, and they are in no way compelled to reach any conclusion.

Com. v. Shaffer, 447 Pa. 91, 107, 288 A.2d 727, 735-36 (1972). Defendant's proposed instruction is thus not only non-standard, but improper.

Defendant proposes other non-standard instructions which he claims should also have been given. Def.'s Amendment to Post Conviction Relief Act Petition, at 39-40. One such proposed instruction would tell the jury that if circumstantial evidence can lead to more than one conclusion, then the evidence is not sufficient to prove guilt beyond a reasonable doubt, and that proof beyond a reasonable doubt requires that the evidence presented "must be inconsistent with innocence and must exclude every hypothesis except that of defendant's guilt." This, again, is totally inconsistent with Pennsylvania law.

> [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

22

Com. v. Matthews, 2005 PA Super 92, ¶ 9, 870 A.2d 924, 928, aff'd sub nom. Com. v. Matthew, 589 Pa. 487, 909 A.2d 1254 (2006) (citing Com. v. Nahavandian, 849 A.2d 1221, 1229-30 (Pa.Super. 2004).

Another proposed instruction which Defendant believes his prior counsel should have requested is one which would instruct the jury that it must reach unanimous agreement on every material underlying fact. Once again, Defendant's proposed instruction is plainly contrary to established Pennsylvania law. "[W]hile the jury ha[s] to be unanimous in finding the defendant guilty beyond a reasonable doubt, there [is] no requirement that each juror individually support that finding of guilt on precisely the same evidence or by according exactly the same weight to various pieces of evidence." Com. v. Camm, 443 Pa. 253, 273, 277 A.2d 325, 335 (1971). A jury in a criminal case is therefore required to reach a unanimous verdict only on the defendant's *guilt or innocence*, and not on every material fact that could support a finding of guilt. Id. Nor is a jury in a criminal case required to be given special interrogatories with every verdict to determine whether every juror found precisely the same facts. Indeed, verdicts need not even be consistent. Com. v. Jackson, 385 Pa.Super. 401, 411, 561 A.2d 335, 340 (1989), aff'd, 526 Pa. 294, 585 A.2d 1001 (1991) ("It has long been the law in Pennsylvania that the inconsistency of verdicts in a criminal case does not provide a basis for relief."); Com. v. Miller, 613 Pa. 584, 596, 35 A.3d 1206, 1213 (2012) ("[W]e refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision. Whether the jury's verdict was the result of mistake, compromise, lenity, or any other factor is not a question for this Court to review.").

Finally, Defendant believes his prior counsel should also have requested the standard instruction under 15.3925C. This instruction informs the jury that it can consider various different facts as circumstantial evidence of the crime of receiving stolen property. A court need

23

not give every possible instruction, nor every instruction requested, however. Com. v. Sandusky, 2013 PA Super 264, 77 A.3d 663, 667.

> A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

Id. (quoting Com. v. Thomas, 904 A.2d 964, 970 (Pa.Super. 2006)). While the Court did not give the instruction listed under 15.3925C, that instruction was unnecessary, particularly in light of all the other instructions given and after the arguments of counsel concerning all the evidence presented. See, e.g., T.T., Vol. IV, 9/10/13, at 65-67 (defense counsel arguing inferences that do not apply in this case, such as an inference due to recently stolen property). In this case, the Court gave, among various other instructions, the standard instructions on proof beyond a reasonable doubt, credibility of witnesses, and conflicting testimony. Id. at 85-91. The Court also gave the standard instruction on circumstantial evidence, and specifically that relating to knowledge and states of mind. Id. at 101-102. The Court then gave the standard instruction on Receiving Stolen Property. Id. at 108-111. These instructions which were given plainly inform the jury that it can consider circumstantial evidence of the facts and circumstances in deciding the case, but that it must be convinced beyond a reasonable doubt based upon all of the evidence that Defendant met the elements of Receiving Stolen Property. This is the very essence of instruction 15.3925C. Thus, 15.3925C would have been little more than cumulative to the other instructions already given.

In fact, it appears to the Court that giving instruction 15.3925C would have been not only cumulative, but actually unfavorable to Defendant because that instruction informs the jury of particular circumstances it can consider, many of which are pertinent to this case, which the jury

24

could consider as evidence *against* Defendant. For example, the instruction informs the jury it can consider the defendant's conduct while possessing the property, the defendant's conduct when arrested, the location of the property, the type of property, the ease or difficulty with which it can be legally transferred, etc. Thus, it appears to the Court that giving that particular instruction would have been favorable to the Commonwealth rather than Defendant, as it would likely have focused the jury even closer upon the evidence against Defendant. Because the instruction would have been unfavorable to Defendant, he could not have been prejudiced by the decision of his prior counsel to request it.

In summation, the instructions given in this case were standard, plainly adequate, and no further instructions were needed. Instruction 15.3925C would have been at best surplus and, more likely, unfavorable to Defendant. Additionally, it would have been error for the Court to give the other non-standard instructions which Defendant now proposes. Because the Court gave every required standard instruction, because Defendant was not prejudiced, and because Defendant's proposed instructions are contrary to law, Defendant's claim that his prior counsel should have requested these additional instructions has no merit, and therefore his prior counsel was not ineffective.

7. *The Court finds that Defendant's counsel did not advise him to refuse the plea agreement and proceed to trial, and therefore Defendant's counsel was not ineffective in advising Defendant.*

Finally, Defendant claims that his prior counsel advised him to refuse the plea agreement, to proceed to trial, and that he could not be convicted of person not to possess a firearm. Defendant's prior counsel testified at the PCRA hearing where he adamantly and credibly denied giving any such advice. Tr. PCRA Hr'g, 5/2/16, at 85-90. In addition, Defendant admitted at the

25

PCRA hearing that he received a letter from his prior counsel, dated July 30, 2013, which advised him of his exposure in this case and that he should accept the Commonwealth's plea offer. Id. at 97-98. Defendant further admitted that his prior counsel is "a good lawyer." Id. at 93. Defendant also admitted to stating on the record at trial, when advised of the plea offer, "Hell, no, I'm not accepting that, man." T.T., Vol. I, 9/5/13, at 6; Tr. PCRA Hr'g, 5/2/16, at 99. Finally, Defendant admitted that he was asked at trial during a colloquy by the Court whether his decision to accept the plea offer was his, and that he testified at trial that it was his decision. T.T., Vol. I, 9/5/13, at 8-9; Tr. PCRA Hr'g, 5/2/16, at 100.

The Court does not find at all credible Defendant's testimony that his prior counsel advised him to reject the plea and proceed to trial. Rather, the Court believes the testimony of Defendant's prior counsel that no such advice was given and that, to the contrary, his counsel advised Defendant to "settle up, young man." Tr. PCRA Hr'g, 5/2/16, at 88. This testimony was corroborated by the letter sent by counsel to Defendant, and by Defendant's initial testimony at trial that it was his own decision to proceed to trial and that he would not accept the plea. Because Defendant's claim is not supported by any credible evidence, it has no arguable merit and therefore his counsel was not ineffective.

## C. Defendant's trial counsel had a reasonable strategic basis for his actions and inactions and therefore was not ineffective.

In addition to Defendant's claims having no arguable merit, they also fail to show that Defendant's counsel did not have any reasonable strategic basis. The Defendant bears the burden of proving that his trial counsel had no reasonable strategic basis for his actions or inactions. Simpson, 620 Pa. at 73, 66 A.3d at 260. The Supreme Court has explained in no uncertain terms that a claim of ineffective assistance of counsel cannot stand where the Defendant's trial counsel

26

could have had any reasonable basis for his actions or inactions. Com. v. Blount, 538 Pa. 156, 171, 647 A.2d 199, 207 (1994) (quoting Com. ex rel. Washington v. Maroney, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967)) (emphasis in original).

> We cannot emphasize strongly enough, however, that our inquiry ceases and counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests. The test is *not* whether other alternatives were more reasonable, employing a hindsight evaluation of the record. Although weigh the alternatives we must, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decisions had any reasonable basis.

Id. (emphasis in original). *See also* Com. v. White, 515 Pa. 348, 352, 528 A.2d 596, 598-99 (1987) (no relief where trial counsel had reasonable basis for not objecting).

Further, the Supreme Court of the United States as well as the Supreme Court of Pennsylvania have each held that counsel is not ineffective for failing to raise every potentially meritorious claim on appeal. Com. v. Jones, 572 Pa. 343, 367, 815 A.2d 598, 613 (2002) (plurality opinion) ("[A]s the U.S. Supreme Court has recognized, appellate counsel is not constitutionally obliged to raise every conceivable claim for relief. Counsel may forego even arguably meritorious issues in favor of claims which, in the exercise of counsel's objectively reasonable professional judgment, offered a greater prospect of securing relief."); Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 765 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.").

The testimony at the PCRA hearing showed that Defendant's prior counsel has been an attorney since 1983, and is appointed as conflicts counsel in Beaver County in cases where the Public Defender's Office has a conflict. He represented Defendant in this case from the time of

27

the preliminary hearing until the conclusion of direct appeal when Defendant's petition for allowance of appeal to the Pennsylvania Supreme Court was denied.

First, regarding Defendant's claim that the Offense Gravity Score should have been lower based on an allegedly lower weight of cocaine, Defendant's prior counsel explained that he did not object because there were a lot of drugs thrown out of the window, he did not want to misrepresent facts to the jury nor lose his and his client's credibility in front of the jury, and he did not want to overemphasize the fact of the weight of the drugs either. Tr. PCRA Hr'g, 5/2/16, at 18-19. In his closing argument at the PCRA hearing, Defendant's present counsel admitted that he could not dispute that the record shows Defendant had over ten grams of cocaine. Id. at 108-109.

Second, regarding the failure to raise the issue of sufficiency of the evidence regarding the charge against Defendant for receiving stolen property, Defendant's counsel explained that he considered cases which quote Judge Aldisert in saying that raising too many issues detracts from appellate presentation, and that in his experience sufficiency of evidence claims are difficult to win. Tr. PCRA Hr'g, 5/2/16, at 22-24; Com. v. Robinson, 581 Pa. 154, 188, 864 A.2d 460, 480, n.29 (2004) ("I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them ... [and] it is [this] presumption ... that reduces the effectiveness of appellate advocacy.") (quoting Aldisert, "The Appellate Bar: Professional Competence and Professional Responsibility–A View From the Jaundiced Eye of the Appellate Judge," 11 Cap. U.L. Rev. 445, 458 (1982)); Jones v. Barnes, 463 U.S. 745, 752-54, 103 S.Ct. 3308, 3313-14 (1983) ("There can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. . . . For judges to second-guess reasonable

28

professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy . . . .").

Third, regarding Defendant's claim that counsel did not move to strike the testimony of Officer Johnson after his objection was sustained, Defendant's prior counsel explained that the Court had already instructed the jury and that he planned on including that in his closing argument, which he did. Tr. PCRA Hr'g, 5/2/16, at 32-35; T.T., Vol. IV, 9/10/13, at 47-48.

Fourth, regarding Defendant's claim regarding the failure to object to the evidence of the absence of any latent prints, prior counsel explained that he "didn't think that was a bad fact," that he thought that fact was important given Defendant's testimony, and that it reflected on whether Slappy possessed the weapon because neither of their fingerprints were on the weapon. Tr. PCRA Hr'g, 5/2/16, at 41-45, 54-56. Defendant's prior counsel also testified that he knew of the latent prints testing, received it in discovery, and agreed with the Commonwealth that they would not be required to bring an expert in to verify the lab results, which was also the recollection of the Assistant District Attorney and verified by the production of the Commonwealth of the lab results and plea offer memo which listed the costs of the latent print lab testing. Id. at 46-47, 56, 104-106; Com.'s Ex. 1. Defendant's prior counsel further explained that, because he knew of the lab results, he could not ethically argue something contrary because of his knowledge of the truth. Tr. PCRA Hr'g, 5/2/16, at 52-54. See also Pa.R.Prof.Conduct 3.3(a)(1). Indeed, Defendant's present counsel conceded this entire issue when he learned that the prior counsel did, in fact, have the lab results in discovery. Tr. PCRA Hr'g, 5/2/16, at 107.

Fifth, regarding Defendant's claim that exhibits should not have gone out to the jury, Defendant's counsel explained that, given his cross-examination of the witnesses, he believed

that if the exhibits went with the jury that it might cause them to consider his cross-examination and the testimony he elicited in Defendant's favor. Tr. PCRA Hr'g, 5/2/16, at 60-64.

Sixth, Regarding Defendant's claim that prior counsel failed to ask for additional instructions, Defendant's prior counsel explained that the Court gave the standard instructions and that it was his choice to argue the factors in closing to the jury. Id. at 67-69, 77.

Finally, regarding Defendant's claim that prior counsel allegedly advised Defendant not to plea but to proceed to trial, Defendant's prior counsel vehemently denied ever giving such advice, and his credible testimony was supported by other evidence as described in the previous section of this Opinion. Id. at 85-90.

After considering the evidence presented at the PCRA hearing, the Court finds that Defendant has utterly failed to overcome the presumption under the Strickland test that his counsel "had no reasonable strategic basis for his action or inaction." Simpson, 620 Pa. at 73, 66 A.3d at 260. Rather, in considering the explanations given by Defendant's prior counsel at the PCRA hearing for each of the claims raised by Defendant, the Court finds that Defendant's prior counsel did in fact have a reasonable strategic basis for each of his actions and apparent inactions.

The testimony of Defendant's prior counsel shows that he worked to maintain his and Defendant's credibility before the jury and that he strategically chose not to resist evidence he believed favorable to the Defendant. It demonstrated that he carefully cross-examined witnesses and strategically chose to agree that certain exhibits would go back with the jury into deliberations so as to remind them of his cross-examination. It revealed how he zealously argued the facts favorable to Defendant and reminded the jury of his successful objection while admonishing the jurors to follow the Court's instructions to disregard impermissible evidence.

30

Finally, it explained how he sought to highlight Defendant's most important issues on appeal, as recommended by various Pennsylvania and Federal judges. If this is not the essence of reasonable strategy and effective advocacy, this Court does not know what is. Because Defendant's trial counsel had a reasonable strategic basis for what he did and did not do, Defendant's trial counsel was not ineffective.

**D. Defendant was not prejudiced by any of his trial counsel's actions or inactions and therefore his trial counsel was not ineffective.**

Because Defendant's claims have no arguable merit and his trial counsel had a reasonable strategic basis for his actions, as described above, Defendant cannot be found to have been prejudiced. But even assuming, *arguendo*, that any of Defendant's claims did have arguable merit and that Defendant's trial counsel did not have a reasonable strategic basis, Defendant still fails to prove what prejudicial effect this had upon him. It is Defendant's burden to plead and prove by a preponderance of the evidence that his "counsel's performance so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place," and to do this he must show that he "was prejudiced—that is, but for counsel's deficient stewardship, there is a reasonable likelihood the outcome of the proceedings would have been different." 42 Pa.C.S.A. §§ 9541-9546; Simpson, 620 Pa. at 73, 66 A.3d at 260 (external citations and quotation marks omitted).

The weight and sufficiency of most of the charges in this case have already been challenged on appeal and affirmed by the Superior Court. The evidence showed that Defendant, as a passenger in a vehicle, was illegally carrying a stolen firearm, over ten grams of cocaine, multiple cell phones, and a large amount of cash. In other words, that he possessed drugs with the intent to deliver. When the vehicle was being pursued by the police for a traffic violation, the

31

evidence showed that Defendant told the driver to keep driving anyway. Then he began throwing cocaine out of the window and onto the streets of Beaver Falls, attempting to dispose of the evidence of his crime, before finally attempting to conceal the illegal weapon under the driver's seat in an attempt to shift the blame. The jury heard the contradictory explanations of both Defendant and Slappy, the driver, and found Defendant guilty on every charge.

Defendant claims that if only his attorney had objected, he would have had a lower Offense Gravity Score and thus been subject to a lighter sentence. Defendant himself admitted, however, that he bought and possessed over ten grams of cocaine. Further, even if his score had been a 7 instead of 8, his present sentence would still have been within the standard range.

Defendant asserts that if his counsel had raised sufficiency of the evidence regarding his receiving stolen property charge on appeal, the outcome would have been different. His counsel raised the issue in this Court, and the circumstantial evidence showing that Defendant had reason to believe the weapon was stolen was persuasive. Defendant was not successful on any other claim he raised on appeal. It is highly unlikely this other claim would have been successful on direct appeal either, and Defendant fails to show any likelihood of success on the merits. Even if Defendant would have been successful, his aggregate sentence would not have been affected.

Defendant states that if only his counsel had made a motion to strike, the jury would not have considered the inadmissible testimony it briefly heard from Officer Johnson. Defendant fails to show, however, that the jury considered that testimony at all. The jury was instructed by the Court, informed that the objection was sustained, and Defendant's prior counsel reminded the jury of this in closing argument. There is no reason to believe that they did not follow the Court's instruction or that they did not heed counsel's reminder. Additionally, Defendant's counsel raised the issue of sufficiency of the evidence for the possession with intent to deliver charge on

32

appeal, and it was rejected. The Superior Court expressly found the evidence sufficient to show Defendant possessed ten grams of cocaine with the intent to deliver.

Defendant argues that if his attorney had objected to the latent prints, they could have been excluded and he could have instead argued that no testing was done and that Slappy's print might have been found on the weapon. The evidence showed, however, that counsel received the results in discovery and agreed ahead of time to allow the lab results in because the Commonwealth could have brought someone in to provide a foundation for the lab results. Further, the lab results were actually *favorable* to Defendant because they did not show either suspect's prints and thus supported Defendant's theory of the case.

Defendant believes that if the reports, which were admitted as evidence, had not been allowed back into the jury room during its deliberations, the jury might not have been led astray by astronomical numbers regarding the DNA evidence. Defendant provides no evidence to support this conclusory assertion, however. There is no evidence at all to indicate that the jury was led astray by the exhibits. They heard the testimony of the expert from the stand, and Defendant's attorney cross-examined the witness to show that the driver, Slappy, could not be excluded based upon the DNA results, i.e., that he also could have had the firearm. Further, various other exhibits were sent back as well, and the jury had the testimony of the latent print results to also show that neither's fingerprints were on the weapon. Defendant thus presents nothing to show that the exhibits were over-emphasized to the exclusion of other evidence.

Defendant concludes that if his counsel had requested the additional jury instructions he proposes, there would have been a different outcome. The Court, however, gave every required standard instruction after conferring with the attorneys. In addition, Defendant's counsel argued in closing the various factors discussed in the only standard instruction that Defendant does

33

propose. Thus Defendant fails to show how he was prejudiced. As for the other instructions Defendant proposes, they are not only non-standard, but are inaccurate statements of the law, as previously explained in this Opinion. The Court could not have given those instructions to the jury even if they had been proposed.

Finally, Defendant avers that if only his counsel had not advised him to reject the plea and go to trial, he would have taken the plea offered by the Commonwealth. This claim appears not only disingenuous to the Court, but is utterly contrary to all the evidence presented during trial. Defendant testified that it was his own decision to reject the plea and proceed to trial, yet in the PCRA hearing he claimed that it really was not his decision. "Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof, especially when it involves an admission of perjury." Com. v. Coleman, 438 Pa. 373, 377, 264 A.2d 649, 651 (1970) (external citations omitted). As previously stated, the Court does not believe Defendant's testimony at the PCRA hearing that his counsel advised him in this way. Rather, it is convinced that Defendant's prior counsel reasonably advised him in this matter, and that, contrary to Defendant's testimony, it was the advice of counsel to accept the plea because of the likelihood that he would be convicted at trial.

To summarize, Defendant has not overcome the presumption of effectiveness. After presiding over this case at trial and after an extensive review of this case for Defendant's instant PCRA proceedings, the Court has not found a single instance in which his prior counsel can be said to have failed to represent Defendant's interests. He counseled Defendant well, made appropriate objections, had reasonable strategic bases for when he did not object, and argued persuasively on Defendant's behalf. Defendant fails to demonstrate in any way that he has been

34

prejudiced in this case. Because he has not been prejudiced, Defendant's counsel was not ineffective.

E. Defendant was incorrectly sentenced on the count of Possession of Cocaine because the Possession charge merges with the charge of Possession with Intent to Deliver.

Defendant's final claim is directed to the legality of his sentence, specifically that he should not have been sentenced to possession of cocaine when that charge should have merged with his conviction for possession with intent to deliver cocaine. "[T]he crime of simple possession is a lesser-included offense of possession with the intent to deliver. Accordingly, [Defendant's] possession and possession with the intent to deliver convictions merged for sentencing purposes. . ." Com. v. Rippy, 1999 PA Super 74, ¶¶ 21-22, 732 A.2d 1216, 1223-24 (external citations omitted). In this case, although Defendant's possession conviction was run concurrent to his other sentences, and thus does not affect his aggregate sentence of seven to fourteen years, Defendant is correct that his possession conviction merges with his possession with intent to deliver conviction for sentencing purposes. Therefore Defendant shall accordingly be resentenced to serve no additional sentence on the possession charge due to its merging with his conviction for possession with intent to deliver.

## CONCLUSION

Regarding Defendant's claims of ineffective assistance of counsel, all three prongs of the Strickland test must be met: (1) arguable merit, (2) no reasonable strategic basis, and (3) prejudice. As explained in the foregoing Opinion, Defendant fails to meet one single prong, and his arguments thus have no merit. Because Defendant has not overcome the presumption of effectiveness, he likewise fails to plead and prove by a preponderance of the evidence that he is entitled to relief under the Post Conviction Relief Act. Defendant's claims of ineffective

35

assistance of counsel thus have no merit and Defendant is not entitled to relief under the Act based upon them.

Defendant's claim, however, that he was improperly sentenced on the charge of possession of cocaine when that charge merges with his conviction of possession with intent to deliver cocaine is properly granted.